IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHERYL HOOK and DAVID SEMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NEMACOLIN WOODLANDS, INC., a Pennsylvania corporation, d/b/a, NEMACOLIN WOODLANDS RESORT; NEMACOLIN, INC., a Pennsylvania corporation; and NWL, CO., a Pennsylvania corporation,<br><br>Defendants. | Civil Action No.: 2:21-cv-387<br><br>**COMPLAINT**<br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiffs Cheryl Hook and David Seman ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this action against NEMACOLIN WOODLANDS, INC., a Pennsylvania Corporation, d/b/a, NEMACOLIN WOODLANDS RESORT; NEMACOLIN, INC., a Pennsylvania corporation; and NWL, CO., a Pennsylvania corporation (collectively, "Defendants"), and in support thereof allege as follows.

I.  NATURE OF THE ACTION

1. Defendants own and manage Nemacolin Woodlands Resort, a purported luxury resort located in Farmington, Pennsylvania, that boasts premium hotel accommodations, fine dining restaurants, two on-property golf courses, spa facilities, and other resort amenities.

1

Nemacolin Resort has garnered national coverage from being featured on television shows such as The Bachelor and The Real Housewives of Potomac.

2. Defendants induced Plaintiffs to pay significant sums in exchange for lifetime memberships to the Nemacolin 400 Club—the Nemacolin Resort membership program that grants access to resort facilities among other membership benefits and privileges. Defendants represented to Plaintiffs that their 400 Club Memberships would be honored throughout the terms of their memberships. However, Defendants wrongfully terminated, dishonored and/or disregarded Plaintiffs' 400 Club memberships without notice or compensation for their termination.

3. Plaintiffs bring this class action for damages and declaratory relief, both individually and on behalf of class members holding Nemacolin Resort 400 Club Memberships. Plaintiffs and class members have entered into membership contracts with Defendants, paid money in furtherance of those contracts, relied to their detriment on Defendants' fraudulent misrepresentations that they would uphold such contracts, and have now been denied the benefits and privileges of those contracts.

## II.   PARTIES

4. Plaintiff Cheryl Hook is, and at all material times mentioned herein was, an adult individual residing in Morgantown, West Virginia.

5. Plaintiff David Seman is, and at all material times mentioned herein was, an adult individual residing in Morgantown, West Virginia.

6. Defendant Nemacolin Woodlands, Inc., doing business as Nemacolin Woodlands Resort, at all material times mentioned herein, is and was a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 1001 LaFayette Drive, Farmington, Pennsylvania.

7. Defendant Nemacolin, Inc., at all material times mentioned herein, is and was a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 1001 LaFayette Drive, Farmington, Pennsylvania.

8. Defendant NWL, Co., at all material times mentioned herein, is and was a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 1001 LaFayette Drive, Farmington, Pennsylvania.

9. Upon information and belief, at all material times hereto, Defendants Nemacolin Woodlands, Inc., Nemacolin, Inc., and NWL, Co., were the agent, employee, partner, co-venturer, and/or co-conspirator of each of the other Defendants, and, in doing the acts herein alleged, were acting within the course and scope of such agency, employment, partnership venture and/or conspiracy, each with the permission, consent and/or ratification of the other Defendants.

10. Defendants Nemacolin Woodlands, Inc., Nemacolin, Inc., and NWL, Co., are hereinafter collectively referred to as "Nemacolin" or "Defendants". Upon information and belief, Defendants are closely interrelated business entities which share office space, corporate office holders and/or board members, and business interests.

11. Upon information and belief, at all material times hereto, Defendants, conducted business in the State of Pennsylvania, acting in their individual corporate capacities as well as by and through its unincorporated divisions and departments, its corporate parents, subsidiaries and/or other affiliates, its alter ego corporations and other entities, its predecessors and/or its successors.

### III.     JURISDICTION AND VENUE

12. This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d) of the Class Action Fairness Act because the amount in controversy exceeds $5,000,000, exclusive

of interest and costs, there are at least 100 members of the proposed Class, and at least one member of the proposed Class is a citizen of a different state from one of the Defendants.

13. This Court also has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because Plaintiffs are of diverse citizenship from Defendants and the amount in controversy as to each Plaintiff exceeds $75,000, exclusive of interest and costs.

14. This Court has personal jurisdiction over Defendants because Defendants are incorporated under the laws of Pennsylvania, Defendants' principal place of business is in this District, Defendants regularly conduct business in this District, and the transactions, events, acts, and/or omissions that form the basis of this Complaint occurred in this District.

15. Venue is proper in the Western District of Pennsylvania because a substantial part of the acts giving rise to Plaintiffs' claims occurred in the District, and Defendants' principal place of business is located in this District.

## IV.   PLAINTIFFS' FACTUAL ALLEGATIONS

16. Nemacolin Woodlands Resort is a purported luxury resort located in Farmington, Pennsylvania, owned and managed, upon information and belief, by Defendants.

17. On the Nemacolin Resort website, www.nemacolin.com, Defendants hold Nemacolin Resort out to the public as a luxury resort offering "premium accommodations," "a range of truly remarkable dining experiences," two Pete Dye-designed golf courses, luxury spa facilities, and other resort amenities. Nemacolin Resort boasts two on-property golf courses— Mystic Rock and Shepherd's Rock (the "Nemacolin Golf Courses")— and its on-site Nemacolin Golf Academy. Nemacolin Resort has garnered national coverage from being featured on television shows such as The Bachelor and The Real Housewives of Potomac.

18. Access to certain Nemacolin Resort amenities, including but not limited to the Nemacolin Golf Courses, pools, and fitness facilities, are available only to Nemacolin Resort guests and members.

19. In or around 1988, Defendants began offering lifetime memberships to the Nemacolin 400 Club (the "400 Club"), the Nemacolin Resort membership program.

20. 400 Club Members were granted special access to the Nemacolin Golf Courses, pool and fitness facilities, membership parties and events, among other resort amenities. 400 Club Members were also given special benefits and discounts throughout Nemacolin Resort, including without limitation, discounted rates for the Nemacolin Golf Courses, spa and wellness facilities and services, the Nemacolin Field Club, Off-Road Driving Academy, Nemacolin restaurants, and retail purchases. A brochure distributed by Defendants detailing 400 Club Membership inclusions is attached hereto as **Exhibit A**.

21. Nemacolin 400 Club Members are given the exclusive opportunity to purchase annual 400 Club Plus Memberships that grant unlimited access to the Nemacolin Golf Courses, other resort facilities, and additional perks and discounts throughout the Resort. The annual dues for 400 Club Plus Memberships range from $2,700 per year for individuals and $3,300 per year for families. A brochure distributed by Defendants detailing the 400 Club Plus Membership is attached hereto as **Exhibit B**.

22. Defendants represented to the public that for a one-time initiation fee, an individual could become a lifetime member of the 400 Club.

23. Defendants also began offering 400 Club Memberships to individuals who purchased certain real property, including but not limited to, townhomes and condominiums (the "400 Club Properties") near the grounds of the Nemacolin Resort.

24. Defendants represented to the public that owners of the 400 Club Properties would be granted a 400 Club Membership so long as they owned a 400 Club Property.

25. Defendants marketed and/or caused 400 Club Properties to be marketed as including a 400 Club Membership.

26. 400 Club Property Owners with 400 Club Memberships were also given the opportunity to purchase annual Homeowner Memberships (the "Homeowner Memberships"), that granted unlimited access to the Nemacolin Golf Courses, other resort facilities, and additional perks and discounts throughout the Resort. The annual dues for Homeowner Memberships range from $2,700 per year for individuals and $3,300 per year for families. A brochure distributed by Defendants detailing the Homeowner Membership is attached hereto as **Exhibit C**.

### A. Plaintiff David Seman

27. Plaintiff Seman relied on Defendants' representations that paying the one-time initiation fee would grant him lifetime access as a 400 Club Member to the Nemacolin Resort. Based on Defendants' representations, in or around 1988, Plaintiff Seman purchased the lifetime 400 Club Membership for approximately $1,500.

28. Plaintiff Semen relied on Defendants' representations that his membership would not be revoked.

29. From in or around 1988 to 2020, Defendants honored the lifetime 400 Club Memberships, and Plaintiff Seman was able to avail himself of the benefits of his lifetime 400 Club Membership.

30. Using his lifetime 400 Club Membership, Plaintiff Seman also purchased the annual 400 Club Plus Membership for multiple years.

### B. Plaintiff Cheryl Hook

31. Plaintiff Hook relied on Defendant's representations that purchase of a 400 Club Property would grant her a 400 Club Membership throughout her ownership of the Property. Based on Defendant's representations, in or around May 2017, Plaintiff Hook purchased a 400 Club Property for approximately $147,000, believing the purchase to include the 400 Club Membership. Attached hereto as **Exhibit D** is a true and correct copy of Plaintiff Hook's Purchase and Sale Agreement (the "Purchase and Sale Agreement").

32. The Purchase and Sale Agreement expressly included with the sale a "400 Club Membership." *See* Exhibit D, at p. 3, ¶ 7; p. 13, ¶ 32(B).

33. From in or around 2017 to 2020, Defendants honored Plaintiff Hook's 400 Club Membership, and Plaintiff Hook was able to avail herself of the benefits of her 400 Club Membership.

34. Using her 400 Club Membership, Plaintiff Hook also purchased the annual 400 Club Plus Membership for multiple years.

### C. Defendant's Termination of the 400 Club Memberships and Rebranding as the Woodlands Club

35. Plaintiffs' 400 Club Memberships with Nemacolin were wrongfully terminated, dishonored, and/or disregarded. In or around 2020, without any prior notice to Plaintiffs, Defendants informed Plaintiffs that they were terminating the 400 Club, and their 400 Club Memberships would no longer be honored.

36. Defendants informed Plaintiffs that they could no longer access the Nemacolin Golf Courses and certain resort facilities and amenities. Defendants further informed Plaintiffs that all 400 Club membership benefits and privileges would be terminated.

37. Soon after Defendants terminated Plaintiffs' 400 Club Membership, upon information and belief, Defendants began offering to certain individuals a substantially similar membership that Defendants dubbed the "Woodlands Club."

38. The Woodlands Club page on Nemacolin Resort's website states that members "enjoy access to all Nemacolin has to offer, including Golf and Resort membership benefits and other exclusive perks."

39. Upon information and belief, Defendants began offering membership to the Woodlands Club for an initiation fee of approximately $25,000, and an additional $10,000 in annual maintenance fees.

40. To date, despite their representations to Plaintiffs and the public, Defendants continue to refuse to honor Plaintiffs' 400 Club Memberships.

## V.    CLASS ACTION ALLEGATIONS

41. *Class Definition*: Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this class action on behalf of the following Classes and/or Sub-Classes:

> a. **The 400 Club Class:** All persons in the United States who obtained a Nemacolin 400 Club Membership at any point to the date of the filing of this action.

42. *Subclass Definitions*: In addition, Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23 on behalf of a subclass of similarly situated individuals (the "Subclass"), defined as follows:

> a. **The 400 Club Homeowner Class:** All persons in the United States who purchased real estate which included a 400 Club Membership.

43. Collectively, the 400 Club Class and the 400 Club Homeowner Subclass are referred to as the "Class" or "Classes".

44. Excluded from the Classes are (i) governmental entities, (ii) Nemacolin and its officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, assigns, and entities in which Nemacolin has a controlling interest, and (iii) the judge, justices, magistrates, or judicial officers presiding over this matter.

45. Plaintiffs reserve the right to modify, change, re-define, or expand the definitions of the Classes prior to class certification upon discovery and further investigation.

46. This action has been brought and may properly be maintained as a class action as it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements of Rule 23(b)(3). Plaintiffs seek to represent ascertainable Classes, as determining inclusion in the Classes can be done through Nemacolin's own records.

47. ***Numerosity*:** The Class is so numerous that separate joinder of each member is impracticable. Although, the precise number of Class members is unknown and can only be determined through appropriate discovery, upon information and belief, there are at least 100 Class members, so that joinder of all members would be impracticable.

48. ***Commonality*:** Questions of law and fact common to the Class exist that predominate over questions affecting only individual members, including:

    a. Whether Defendants wrongfully terminated, dishonored, and/or disregarded the 400 Club Memberships of Plaintiffs and Class members;

    b. Whether Defendants breached its membership contracts with Plaintiffs and Class members;

    c.    Whether Defendants employed unlawful and/or deceptive tactics involving 400 Club Memberships;

    d.    Whether Defendants were unjustly enriched;

    e.    The proper measure of damages.

49. ***Typicality:*** Plaintiffs' claims are typical of those brought on behalf of the members of the Classes and/or Sub-Classes. Plaintiffs, like all Class members, obtained 400 Club Memberships and were denied the benefits and privileges of the Memberships.

50. ***Adequacy of Representation***: Plaintiffs will fully and adequately represent and protect the interest of the Classes and/or Sub-Classes because the common injuries and interests of the members of the Class and/or Sub-Classes and the singular conduct of Defendants that is or was applicable to all members of the Classes and/or Sub-Classes. Plaintiffs have no interests that are contrary or in conflict with those of the Classes and/or Sub-Classes they seek to represent.

51. Plaintiffs have retained counsel who are competent and experienced in the prosecution of class action suits and consumer litigation.

52. ***Superiority***: Certification of the Classes is appropriate pursuant to Fed. R. C. P. 23(b)(3) because questions of law or fact common to the respective members of the Class predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims including consistency of adjudications. Absent a class action, it would be unlikely that many members of the Classes would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed the expected recovery.

53. A class action is a superior method for the adjudication of the controversy in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently,

and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense, and the burden of the courts that individual actions would create.

54. In the alternative, the Classes should be certified because:

    a. The prosecution of separate actions by the individual members of the proposed class would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Nemacolin; and

    b. The prosecution of individual actions could result in adjudications, which as a practical matter, would be dispositive of the interests of non-party class members or which would substantially impair their ability to protect their interests; and

    c. Nemacolin has acted or refused to act on grounds generally applicable to the proposed Classes, thereby making final and injunctive relief appropriate with respect to the members of the proposed Classes as a whole.

## COUNT I
## BREACH OF CONTRACT
### *On behalf of all Classes*

55. Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs as though fully set forth herein.

56. By entering into membership contracts with 400 Club Members, Defendants agreed to provide access to certain Nemacolin Resort facilities, services, amenities, discounts, benefits, and other privileges of the 400 Club Membership throughout the term of the memberships.

57. Plaintiff Seman and Class members agreed, in return, to pay the required one-time membership initiation fee for lifetime 400 Club Memberships. Plaintiff Seman and Class members performed or substantially performed all of their obligations under the membership agreements.

58. Plaintiff Hook and Class members agreed, in return, to purchase 400 Club Properties based on the inclusion of a 400 Club Membership with the real estate purchase. Plaintiff Hook and Class members purchased 400 Club Properties and performed or substantially performed all of their obligations under the membership agreements.

59. In contrast, Defendants breached its contractual obligations by terminating the 400 Club Memberships prior to the agreed-upon terms.

60. Defendants failed to provide access to Nemacolin Resort facilities, amenities, and services, and denied access to 400 Club Members of the benefits, rights, and privileges of the 400 Club Memberships which they originally sold.

61. Moreover, Defendants breached the implied covenant of good faith and fair dealing, by knowingly failing to provide Plaintiff and Class members with the benefits and privileges they paid consideration for and believed they were receiving.

62. As a direct and proximate result of Defendants' breach, Plaintiffs and Class members have been damaged, and continue to suffer damages, in an amount to be determined at trial.

## COUNT II
## BREACH OF IMPLIED CONTRACT AND/OR QUASI CONTRACT
### *On behalf of all Classes*

63. Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs as though fully set forth herein.

64. Defendants offered for sale lifetime 400 Club Memberships, based upon representations that anyone purchasing a lifetime 400 Club Membership for a one-time initiation fee would receive the full benefits and privileges of a 400 Club Membership throughout their lifetime.

65. Additionally, Defendants offered 400 Club Memberships, based upon representations that purchase of a 400 Club Property would include a 400 Club Membership that would continue throughout ownership of the 400 Club Property.

66. Plaintiffs and Class members accepted Defendant's offers of 400 Club Memberships and paid consideration for the 400 Club Memberships.

67. The acts and conduct of Defendants, Plaintiffs, and members of the Class, establish an implied-in-fact contract.

68. Plaintiffs and Class members performed all of their obligations under the contracts by providing consideration in the form of initiation fees and/or purchases of real property.

69. Plaintiffs and members of the Class reasonably understood from Defendant's representations, conduct, and/or the surrounding circumstances that the parties entered into a contract where Defendant would agree to provide the benefits and privileges of the 400 Club Memberships throughout the entire term of the memberships.

70. Defendants have breached its implied-in-fact contracts with Plaintiffs and members of the Class by wrongfully terminating, dishonoring, and/or disregarding their 400 Club Memberships.

71. As a direct and proximate result of Defendants' breach of the implied-in-fact contracts, Plaintiffs and members of the Class have been damaged and continue to suffer damages in an amount to be determined at trial.

## COUNT III
## UNJUST ENRICHMENT
*On behalf of all Classes*

72. Plaintiffs incorporate by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

73. Defendants' false promises and breaches of the 400 Club membership agreements, have directly, foreseeably, and proximately caused damages and injuries to Plaintiffs and members of the Class in amounts yet to be determined.

74. By failing to perform under the membership contracts and deliver the promised terms, rights and privileges of those contracts, Defendants have retained Plaintiffs' money and/or otherwise profited under the membership contracts.

75. Defendants have been unjustly enriched through the pre-payment of 400 Club memberships, and by the receipt of profits from money rightfully belonging to the Plaintiffs and members of the Class, and they have been deprived of the use of those funds.

76. Moreover, Defendants have been unjustly enriched through their failure to extend services, provide facilities, member discounts, and other benefit, rights, and privileges of the 400 Club Memberships. By their failure to perform under the membership contracts, such benefits, but for the misconduct of the Defendants, would have inured to the benefit of the Plaintiffs and members of the Class.

77. As a result, Defendants will be unjustly enriched if they are allowed to retain the funds and the profit gained from the 400 Club membership contracts, and will further be unjustly enriched by refusing to reimburse Plaintiffs and Class members an amount sufficient to cover the loss of such benefits, rights, and privileges.

78. Accordingly, a constructive trust should be imposed on all monies wrongfully detained by the Defendants, received or held by them, paid to them, or otherwise credited to Plaintiffs and Class members, for whom membership benefits, rights, and privileges have not been provided.

79. Plaintiffs and the members of the Class have no other adequate remedy at law.

80. Plaintiffs and members of the Class have been damaged in an amount to be determined at trial.

## COUNT IV
## VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES CONSUMER PROTECTION LAW
*On behalf of all Classes*

81. Plaintiffs incorporate by reference the allegations set forth in the previous paragraphs above as though fully set forth herein.

82. Defendants' conduct constitutes unfair and deceptive acts and practices within the meaning of Pennsylvania's Unfair Trade Practices Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1, *et seq.* Defendants' conduct involves purchases by Plaintiffs and Class members of goods and/or services for personal, family, or household purposes.

83. The UTPCPL makes it unlawful for a person to engage in under or deceptive acts, including without limitation: "(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have…(vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another…(ix) Advertising goods or services with intent not to sell them as advertised… (xi) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions…(xiv) Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made…(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 Pa. Stat. Ann. § 201-2.

84. Defendants' conduct, as detailed above, constitutes fraudulent and deceptive conduct, in violation of the UTPCPL.

85. Pursuant to the UTPCPL, Plaintiffs and Class members are entitled to recover up to three times the actual damages caused by Defendants and their improper conduct, as well as reasonable attorney's fees.

86. As a direct and proximate result of Defendants' violations, Plaintiffs and Class members are entitled to damages, including but not limited to, the amount of the consideration paid to Defendants for 400 Club Memberships, and the sums Plaintiffs will be required to spend to replace such memberships, treble damages, and attorney's fees and costs.

## COUNT V
## FRAUDULENT MISREPRESENTATION
*Plaintiffs against Defendants*

87. Plaintiffs incorporate by reference the allegations set forth in the previous paragraphs above as though fully set forth herein.

88. Defendants engaged, and continue to engage, in fraudulent, bad faith, false/and or deceptive practices.

89. Defendants fraudulently and/or intentionally misrepresented to Plaintiff Seman that payment of a one-time initiation fee would provide him with a lifetime 400 Club Membership.

90. Defendants fraudulently and/or intentionally misrepresented to Plaintiff Hook that purchase of a 400 Club Property would include a 400 Club Membership that would continue throughout her ownership of the 400 Club Property.

91. Defendants made fraudulent representations, including without limitation, through marketing materials, brochures, and other representations that 400 Club Memberships would be honored throughout the entire term of the memberships.

92. Defendants additionally made fraudulent representations to Plaintiffs that their 400 Club Memberships could be unilaterally terminated by Defendants without notice or compensation.

93. Further, Defendants failed to disclose that the 400 Club Memberships would be terminated, disregarded and/or dishonored at any time by Defendants.

94. Plaintiffs would have acted differently had they not been misled by Defendants' fraudulent misrepresentations.

95. Plaintiffs detrimentally relied upon Defendants' misrepresentations that Defendants would provide the benefits and privileges of 400 Club Memberships throughout the term of the memberships, and were damaged by Defendants' bad faith conduct.

96. By and through such fraud, concealment, deceit, misrepresentations, and/or omissions, Defendants intended to induce Plaintiffs and Class members to alter their position to their detriment.

97. As a direct and proximate result of Defendants' misrepresentations and omissions, Plaintiffs have suffered damages and continue to suffer damages in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of all other members of the proposed Classes, seek the following relief:

a. An order certifying this action as a class action under Fed. R. Civ. 23, defining the Classes as requested herein, appointing Plaintiffs and the undersigned counsel to represent the Classes, and that notice to the Classes to be paid by Defendants;

b. A declaration that Defendants have committed the violations alleged herein;

c. Damages according to proof in an amount to be determined at trial;

d. Treble the actual damages sustained by Plaintiffs and Class members;

e. Restitution, the exact amount to be determined at trial;

f. Punitive damages according to proof in an amount to be determined at trial;

g. Attorney's fees and costs of suit, together with pre-and post-judgment interest;

h. All other equitable relief, including disgorgement by Defendants of profits obtained pursuant to the conduct described herein;

i. Such other relief as the Court deems proper.

Respectfully submitted,

Date: March 23, 2021

Joy D. Llaguno (Pa. No. 327120)
HOOK & HOOK PLLC
430 East Oakview Drive, Suite 101
Waynesburg, PA 15370
Phone: 724-802-7144
Fax:    724-802-7959
Email: jllaguno@hooklaw.com
*Attorneys for Plaintiffs and the Putative Class*

## JURY TRIAL DEMAND

Plaintiffs, on behalf of themselves and the Classes, hereby demand a trial by jury in this action of all issues so triable.

Respectfully submitted,

Date: March 23, 2021

Joy D. Llaguno (Pa. No. 327120)
HOOK & HOOK PLLC
430 East Oakview Drive, Suite 101
Waynesburg, PA 15370
Phone: 724-802-7144
Fax:    724-802-7959
Email: jllaguno@hooklaw.com
           phook@hooklaw.com
*Attorneys for Plaintiffs and the Putative Class*